**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

BILLY J. BOND,

          Plaintiff,

v.                                                                   Case No. 8:08-cv-2056-T-33EAJ

RIPA & ASSOCIATES, LLC,

          Defendant.

_____

**DEFENDANT'S TRIAL BRIEF**

## I.    INTRODUCTION

       Plaintiff Billy J. Bond ("Plaintiff") filed this suit against Defendant RIPA & Associates,

LLC ("RIPA") on October 15, 2008.  Plaintiff's Complaint alleges violation of the Fair Labor

Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA").   Plaintiff claims that he was improperly

denied overtime pay (Count I).  The evidence will show that Plaintiff was exempt from overtime

compensation pursuant to 29 U.S.C. §213(a)(1), the executive and/or administrative exemptions

of the FLSA.

       RIPA is a family owned construction company based in Tampa, Florida that offers full-

service commercial, institutional, and residential site development, in addition to infrastructure

improvements.  RIPA specializes in grading, paving and stormwater detention facilities, water,

sanitary sewer gravity, (forcemains and lift stations), storm water systems, and roadway

construction.

       To accomplish its day-to-day work, RIPA employs Foremen, Assistant Superintendents,

and Superintendents to be "eyes and ears" in the field to supervise and manage its employees and

projects throughout Hillsborough, Pinellas and Pasco Counties. A Foreman's primary duty is to

manage the discrete subdivision of the overall construction project assigned to him -- ensuring that the right supplies, equipment and materials are available for the job, developing a work plan, and utilizing and managing the crew to accomplish the project in the most cost-effective manner possible, keeping the project on schedule and budget. Assistant Superintendents and Superintendents possess the same primary duty, but in an expanded scope -- directly supervising the foremen in their assigned projects, spending their days visiting multiple jobsites and ensuring that foremen and their crews are keeping the projects on schedule and budget in accordance with the plans and specifications for the particular job.

RIPA first hired Plaintiff as a non-exempt bulldozer operator on June 19, 2002. As a dozer operator, Plaintiff earned $15.00 per hour and was paid time-and-a-half for any overtime he worked. RIPA promoted Plaintiff to Dirt Foreman in 2004. Plaintiff made a lateral move to become a Fine Grade Foreman in April 2005. RIPA promoted Plaintiff from Fine Grade Foreman to Superintendent on April 24, 2005. Plaintiff's performance resulted in a reclassification of his position from Superintendent to Assistant Superintendant between 2005 and 2006, but his duties remained the same. RIPA demoted Plaintiff from Assistant Superintendent back to Fine Grade Foreman on February 12, 2007. RIPA selected Plaintiff for demotion because not as many Assistant Superintendents were needed due to a downturn in work, and Plaintiff did not rank among RIPA's most productive or efficient Assistant Superintendents. Despite the demotion, RIPA did not reduce Plaintiff's salary. RIPA eliminated Plaintiff's Fine Grade Foreman position, along with 44 other positions, in August 2008, when RIPA downsized due to a severe downturn in its work. Plaintiff's employment with RIPA terminated on August 21, 2008, as part of the reduction in force.

Upon Plaintiff's promotion to his first Foreman position in 2004, RIPA significantly increased Plaintiff's pay and benefits from the $15.00 per hour he earned as a non-exempt bulldozer operator. RIPA paid Plaintiff a salary of <u>at least</u> $1,000.00 per week -- more than

$50,000.00 annually -- in addition to benefits including vacation and sick leave and a company car and cell phone. Indeed, RIPA was paying Plaintiff approximately $60,000.00 annually at the time of his termination in August 2008.

Plaintiff, who has twenty-four years of experience in the heavy construction industry, sought the Foreman and Superintendent positions because of the increased responsibility, pay and benefits commensurate with the positions. As a Foreman, Assistant Superintendant and Superintendent with RIPA, Plaintiff performed duties that are exempt under the FLSA. As the evidence will show, Plaintiff's primary duty was management of the subdivision of the projects assigned to him, Plaintiff customarily and regularly directed the work of two or more employees, and Plaintiff had the authority to affect hiring, firing and advancement decisions within RIPA. Additionally, Plaintiff's primary duty was the performance of non-manual work directly related to RIPA's management or general business operations, and Plaintiff exercised discretion and independent judgment with respect to matters of significance.

The evidence will also show that as a Foreman and an Assistant Superintendent, Plaintiff voluntarily operated a bulldozer, while simultaneously performing his management and supervisory duties. Importantly, Plaintiff's time operating a dozer was at his own discretion, for the sole purpose of completing a project in a cost-effective and timely manner. At no time was Plaintiff relieved of his supervisory duties simply because he was also operating a dozer.

## II.    LEGAL ARGUMENT AND AUTHORITIES

### A.    Plaintiff Is Exempt From Overtime Compensation Under the FLSA

Plaintiff cannot establish a claim for overtime compensation under the FLSA. The timeframe relevant to Plaintiff's overtime claim is October 2005 through October 2008 based on the maximum limitations period under the FLSA and the date Plaintiff filed his Complaint. During this timeframe, while at the Foreman- or Superintendent-level, Plaintiff was exempt from

the overtime requirements of the FLSA under the executive and/or administrative exemptions thereto.

**1.    As a Foreman, Assistant Superintendent and Superintendent, Plaintiff Qualified for the Executive Exemption to the FLSA**

The evidence at trial will establish that Plaintiff qualified for the executive exemption both as Foreman, Assistant Superintendent, and Superintendent.  Under the executive exemption to the FLSA, an employee qualifies for the exemption, and therefore, is not entitled to receive overtime wages, if the following conditions are met:

> (1) the employee is compensated on a salary basis at a rate "of not less than $455 per week"; (2) the employee's "'primary duty' is the management of the enterprise" that employs him, or a "customarily recognized department" or subdivision thereof"; (3) the employee "customarily and regularly directs the work of two or more other employees"; and (4) has the "authority to hire or fire other employees or whose suggestions and recommendations as to the hiring, firing, advancement, promotion or other change of status of other employees are given 'particular weight.'"

29 C.F.R. § 541.100(a)(1) – (4)).

It is undisputed that RIPA paid Plaintiff a set salary each week well in excess of $455 per week; therefore, this inquiry must focus on the second, third and fourth prongs of the above test.

**a.    Plaintiff's primary duty was the day-to-day management of his assigned construction project.**

Plaintiff's primary duty, during his tenure as Foreman, Assistant Superintendent and Superintendent, was dedicated to day-to-day management of the discrete subdivision of the overall construction project assigned to him.  To meet the primary duty prong of the executive exemption, Plaintiff's primary duty must have been the management of a customarily recognized department or subdivision of his employer. 29 C.F.R. § 541.100(a)(2). The regulations define "management" as including activities such as interviewing, selecting, training, and disciplining

employees; appraising employees' productivity and efficiency for the purpose of recommending promotions or other changes in status; setting hours of work; planning, directing, and apportioning employees' work; handling employee complaints; controlling the flow and distribution of materials or supplies; ensuring safety of employees or the property; and monitoring legal compliance measures. *See* 29 C.F.R. § 541.102. A "customarily recognized department or subdivision" refers to a unit with permanent status and function. 29 C.F.R. § 541.103(a). RIPA's permanent positions of Fine Grade Foreman, Assistant Superintendent and Superintendent illustrate the permanence of those positions and the responsibilities associated therewith.

"An employee's primary duty is usually 'what [the employee] does that is of principal value to the employer, not the collateral tasks that she may also perform, even if they consume more than half her time.'" *Mims v. Starbucks Corp.*, No. H-05-0791, 2007 U.S. Dist. LEXIS 9, at *11 (S.D. Tex. Jan. 2, 2007) (*quoting Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990)); *see* 29 C.F.R. § 541.700(a). The term "primary duty" means the "principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700; *see Diaz v. Team Oney, Inc.*, No. 08-12904, 2008 U.S. App. LEXIS 18970, at *5, (11th Cir. Sept. 3, 2008). Factors to consider include the relative importance of the exempt duties compared to non-exempt duties, the relative freedom from direct supervision, and the relationship of the employee's salary and the wages paid to other employees for the non-exempt work performed by the employee. *See* 29 C.F.R. § 541.700(a); *Posely v. Eckerd Corp.*, 433 F. Supp. 2d 1287, 1303 (S.D. Fla. 2006).

In *Diaz v. Team Oney, Inc.*, the Eleventh Circuit held that the plaintiff, an assistant manager at a restaurant, was covered by the executive exemption, despite plaintiff's contention that he spent a significant amount of time performing non-exempt work. *Diaz,* 2008 U.S. App.

LEXIS 18970.  In holding that plaintiff's primary duty was management, the Court noted that plaintiff's management duties – for example, supervising employees, apportioning work, filling out required forms, and interviewing prospective employees - were "significantly more important to the operation of the restaurant than his non-managerial tasks." *Diaz*, 2008 U.S. App. LEXIS 18970, at *6.

Similarly, the court in *Slusser v. Vantage Builders, Inc.* held that the plaintiff's primary duty was management and qualified for the executive exemption despite significant time performing clerical work.  *Slusser v. Vantage Builders, Inc.*, 576 F. Supp. 2d 1207, 1218 (D. N.Mex. 2008).  The court noted that, as will be proven in this case, it was the plaintiff's decision to perform non-exempt work and that she used her own judgment to decide when to perform non-managerial work. *Id.* at 1219-20; s*ee also Aguirre v. SBC Communs., Inc.*, No. H-05-3198, 2007 U.S. Dist. LEXIS 72666, at *65, 69-70, (S.D. Tex. Sept. 30, 2007) (applying executive exemption because duties required plaintiffs to ensure subordinates complied with policies, exercised discretion and independent judgment in presence of detailed and well-defined standards, plaintiff was relatively free from supervision in some important job functions, and their recommendations regarding termination were given weight, although they did not have the power to make the final decision); *Golden v. Merrill Lynch & Co.*, No. 06-Civ-2970, 2007 U.S. Dist. LEXIS 90106, at *34-40 (S.D.N.Y. Dec. 6, 2007) (holding that employee's primary duty was managerial whose duties included checking time cards for accuracy, evaluating employees, recommending discipline, and ensuring unit was meeting performance objectives met duties test).

The amount of time spent performing exempt duties alone is not determinative. *See* 29 C.F.R. § 541.700(b).  "[N]othing in this section [29 C.F.R. § 541.700(b)] requires that exempt

employees spend more than 50 percent of their time performing exempt work." 29 C.F.R. § 541.700(b). "Employees who do not spend more than 50 percent of their time performing exempt duties may nonetheless meet the primary duty requirement if the other factors support such a conclusion." 29 C.F.R. § 541.700(b); *see Jackson v. Jean Coutu Group (PJC) USA, Inc.*, No. CV206-194, 2007 U.S. Dist. LEXIS 46305 (S.D. Ga. June 26, 2007) (granting summary judgment in favor of the employer on the issue of the executive exemption where store manager claimed management was not her primary duty on the ground that she performed non-exempt duties substantially the same as those performed by hourly wage employees 95 percent of the time).

Indeed, the *Slusser* Court noted that "courts regularly have found that management duties are primary even when the employee spends the vast majority of her time on non-exempt activities." *Slusser*, 578 F. Supp. 2d at 1217. "Although Plaintiff may have spent the majority of her time completing the same work as the employees she supervised, she did not abdicate her supervisory duties while she engaged in her clerical duties." *Slusser*, 578 F. Supp. 2d at 1221; *see Mims*, 2007 U.S. Dist. LEXIS 9, at *20 (holding that "even while performing barista tasks, Plaintiffs simultaneously also performed many of their management tasks," e.g., serving as a "role model" for baristas, observing their performance for purposes of enforcing company standards, completing evaluations, giving feedback.); *Diaz*, 2008 U.S. App. LEXIS 18970, at *6.

The evidence will also show that Plaintiff received little or no direct or regular supervision for his day-to-day management decisions as a Foreman. In *Mims*, the court rejected plaintiffs' argument that they were not relatively free from supervision simply because district managers visited their stores three to four times per week, stayed from a few hours to all day, and issued directives via phone and e-mail. *Mims*, 2007 U.S. Dist. LEXIS 9, at *27. The court,

7

holding that periodic visits by a higher ranking manager do not eliminate the day-to-day discretion of the on-site manager, noted that plaintiffs' managers supervised between nine and thirteen stores, with some stores as far as thirty minutes from one another. *Mims*, 2007 U.S. Dist. LEXIS 9, at *27; *see also Posely*, 433 F. Supp. 2d at 1304 (holding that retail pharmacy store managers meet the executive exemption as they oversaw the daily operations of their stores; it was impossible for plaintiffs' higher-ranking manager who oversaw over twenty stores to oversee daily operations).

Similarly, the evidence at trial will show that while Plaintiff was a Foreman, the limited supervision he received did not eliminate his day-to-day discretion with his crew.  Indeed, the evidence will show that Plaintiff's supervisor, then-General Superintendent Larry DeWitt, traveled between jobsites in Hillsborough, Pasco and Pinellas County and visited Plaintiff in person only once or twice per month.  *See Mitchell v. Abercrombie & Fitch, Co.*, 428 F. Supp. 2d 725, 743 (S.D. Ohio 2006) (granting summary judgment to defendant employer where plaintiff store manager's District Managers "regularly visited his store and retained authority to override certain of his management decisions" because such supervision "did not undermine his day-to-day authority") (*citing Murray v. Stuckey's, Inc.,* 50 F.3d 564, 570 (8th Cir. 1995), *cert. denied*, 516 U.S. 863 (1995) ("[A]ctive supervision and periodic visits by a regional manager do not eliminate the day-to-day discretion of the on-site store manager").  Moreover, the evidence will show that Plaintiff had even less supervision and more discretion and authority during his tenure as an Assistant Superintendent or Superintendent.

Further, Plaintiff communicated directly with RIPA's clients regarding the progress and status of projects.  Plaintiff's communications with RIPA's clients were not monitored by his supervisors; instead, he was given the authority to communicate freely with RIPA's clients. *See*

*Hein v. The PNC Financial Servs. Grp., Inc.*, 511 F. Supp.2d 563, 574 (E.D. Pa. 2007) (concluding that because the employee's supervisor did not observe his meetings with clients or listen to his phone conversations with clients, the employee exercised a high degree of independence and discretion).

Finally, Plaintiff's first promotion from bulldozer operator to Foreman in 2004 was marked with a significant increase in compensation, benefits and perks, as well as responsibilities. Plaintiff went from a $15.00 per hour job with no benefits to making a salary at his termination of almost $60,000.00 per year, with paid sick leave, a company car, and a company-provided cell phone, among other benefits associated with management. Plaintiff sought and gladly accepted the numerous benefits of his new, supervisory positions and never once complained that he wanted to be demoted or give up his fruits of management.

The evidence at trial will demonstrate that Plaintiff's primary duty as Fine Grade Foreman was managing a recognized department or subdivision of RIPA that performed the finishing work on a particular site and/or construction project. Likewise, Plaintiff's primary duty as a Superintendent and Assistant Superintendent was supervising and managing several Foremen, overseeing several recognized RIPA departments or subdivisions. *See* Op. Dep't of Labor 2007 DOLWH LEXIS 3 (Jan. 25, 2007) (opining that a project superintendent position qualifies for the executive exemption), attached hereto as Exhibit A.

The evidence will show that Plaintiff's primary duty as a Foreman, Superintendent and Assistant Superintendent was the management of a customarily recognized department or subdivision of Defendant. As in the cases cited above, Plaintiff's primary duty was the overall "management" of his employees, regardless of whether he was simultaneously performing work on a bulldozer. The evidence will show that Plaintiff's attempts to convolute his management

position into that of a glorified bulldozer operator are wholly without merit.  As both a Foreman and Assistant Superintendent, Plaintiff's management responsibilities far exceeded the importance of his work on the dozer from RIPA's perspective, he had little direct supervision, and he was paid significantly more as an exempt Foreman or Assistant Superintendent than he was as a non-exempt dozer operator.

> **b.    Plaintiff customarily and regularly directed the work of two or more employees.**

The evidence will show that Plaintiff meets the third prong of the executive exemption because he customarily and regularly directed the work of two or more other employees. *See* 29 C.F.R. § 541.100(a)(3); *see* 29 C.F.R. § 541.701 ("The phrase 'customarily and regularly' means a frequency that must be greater than occasional but which, of course, may be less than constant.").

> **c.    Plaintiff's authority extended to affecting the hiring, firing, and advancement of other RIPA employees.**

Plaintiff also meets the third prong of the executive exemption test: he had the authority to hire or fire other employees or make suggestions and recommendations as to the hiring, firing, advancement, promotion, or other change of status of other employees that are given particular weight. *See* 29 C.F.R. § 541.100(a)(4).  Moreover, simply because higher approval was necessary to terminate an employee is insufficient to disestablish exempt status. *Cowan v. Treetop Enters., Inc.*, 120 F. Supp. 2d 672, 690 (M.D. Tenn. 1999) (*quoting Murray*, 50 F.3d 564 at 569).

> **2.    As a Foreman, Superintendent and Assistant Superintendent, Plaintiff Also Qualified for the Administrative Exemption to the FLSA**

In addition to qualifying for the executive exemption, Plaintiff qualifies for the administrative exemption. An employee qualifies for the administrative exemption, and

therefore, is not entitled to receive overtime wages, if the following conditions are met:

> (1) he is compensated on a salary basis or fee basis at a rate of not less than $455 per week; (2) his "primary duty is the performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) his "primary duty includes the exercise of discretion and independent judgment with respect to matters of significance."

*Kessler v. Lifesafer Service Providers, LLC*, 545 F. Supp.2d 1244, 1246 (M.D. Fla. 2008) (*quoting* 29 C.F.R. § 541.201(a)); *Talbott v. Lakeview Ctr., Inc.*, Case No. 3:06cv378, 2008 U.S. Dist. LEXIS 84065 at *10-11 (N.D. Fla.). It is undisputed that RIPA paid Plaintiff a set salary each week well in excess of $455 per week; therefore, this inquiry will focus on the second and third prongs of the foregoing analysis.

> **a.    Plaintiff's primary duty was in the performance of non-manual work directly related to RIPA's management or general business operations.**

Plaintiff's primary duty, as Foreman, Superintendent and Assistant Superintendent, was the performance of non-manual work directly related to RIPA's management or general business operations. "The term 'primary duty' means the principal, main, major or most important duty that the employee performs." 29 C.F.R. § 541.700. "Determination of an employee's primary duty must be based on all the facts in a particular case, with the major emphasis on the character of the employee's job as a whole." *Id.*

To qualify for the administrative exemption, an employee's primary duty is considered "directly related to the management or general business operations" if it is "directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." *Talbott*, 2008 U.S. Dist. LEXIS 84065, at *12 (*quoting* 29 C.F.R. § 541.201(a)). As the Second Circuit recently held, "[w]hat determines whether an [employee] performed

production or administrative functions is the nature of her duties, not the physical conditions of her employment." *Davis v. J.P. Morgan Chase & Co.*, 587 F.3d 529, 533 (2d Cir. 2009). To satisfy the "directly related to" requirement, an employee's work should relate to, *inter alia*, auditing, quality control, compliance issues, procurement, safety and health, personnel management, and human resources. 29 C.F.R. § 541.201(b)).

Defendant will establish at trial that Plaintiff, as a Foreman, Superintendent and Assistant Superintendent, primarily performed non-manual work directly related to RIPA's primary business operations, that is, managing, allocating and reallocating labor, resources, supplies and materials for RIPA projects. *See Black v. Colaska Inc.*, Case No. C07-823JLR, 2008 U.S. Dist. LEXIS 88507, at *3, 24-25 (W.D. Wash. Oct. 20, 2008) (holding that Plaintiff, who performed physical labor operating heavy equipment, while simultaneously being responsible for the success or failure of the project, performed non-manual work directly related to management or business operations.); *see Paul v. UPMC Health Sys.*, Case No. 06-1565, 2009 U.S. Dist. LEXIS 19277, at *27 (W.D. Pa. Mar. 10, 2009) (applying administrative exemption even assuming that plaintiff spent a large percentage of her time performing menial tasks because she made key decisions).

Supervision of employees and independent contractors is a cornerstone of management responsibilities. *See Donovan v. Burger King Corp.*, 672 F.2d 221, 226 (1st Cir. 1982). "Ensuring that company policies are carried out constitutes 'the very essence of supervisory work.'" *Id.* (*quoting Anderson v. Federal Cartridge Corp.*, 62 F. Supp. 775, 781 (D. Minn. 1945)). Plaintiff's primary duty was to ensure quality control standards were met for every project Plaintiff supervised. One of the primary means to accomplish this objective was through effective supervision of the crews he supervised. *See Johnson v. Home Team Productions, Inc.*,

Case No. 03-2775, 2004 U.S. Dist. LEXIS 13251 (E.D. La. July 15, 2004) (finding that as a field manager, the plaintiff's primary duty was supervising work crews, which "clearly constitutes non-manual work directly related to management policies" of the company).

Similar to the analysis above regarding Plaintiff's time spent on a bulldozer, the evidence will show that Plaintiff's primary duty did not change simply because he spent some of his time operating a bulldozer, if he did.  In sum, the evidence will show that Plaintiff's primary duty as Foreman, Superintendent and Assistant Superintendent was non-manual work directly related to RIPA's management or general business operations.

> b.    **Plaintiff exercised discretion and independent judgment with respect to matters of significance.**

Defendant will also establish at trial that Plaintiff met the third prong of the analysis; that Plaintiff's "primary duty must include the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.202(a).  Supervising and directing employees necessarily involves the exercise of judgment and discretion. *See McDowell v. Cherry Hill Township*, Case No. 04-1350, 2005 U.S. Dist LEXIS 29327, at *32 (D.N.J. Nov. 21, 2005) (finding that an employee serving as a supervisor would be regularly required to exercise discretion and independent judgment).  "The term 'matters of significance' refers to the level of importance or consequence of the work performed." *Id.*  "This work is defined as 'involv[ing] comparison and the evaluation of possible courses of conduct, and acting or making a decision after the various possibilities have been considered.'" *Talbott*, 2008 U.S. Dist. LEXIS 84065 at *20-21 (*quoting* 29 C.F.R. § 541.202(a)).

The Department of Labor regulations provide ten factors for consideration in determining whether an employee exercised independent discretion and judgment. *See* 29 C.F.R. § 541.202(b). Section 541.202(b) provides that the "[f]actors to consider when determining

13

whether an employee exercises discretion and independent judgment with respect to matters of significance include, but are not limited to:

1.  whether the employee has authority to formulate, affect, interpret, or implement management policies or operating practices;

2.  whether the employee carries out major assignments in conducting the operations of the business;

3.  whether the employee performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

4.  whether the employee has authority to commit the employer in matters that have significant financial impact;

5.  whether the employee has authority to waive or deviate from established policies and procedures without prior approval;

6.  whether the employee has authority to negotiate and bind the company on significant matters;

7.  whether the employee provides consultation or expert advice to management;

8.  whether the employee is involved in planning long- or short-term business objectives;

9.  whether the employee investigates and resolves matters of significance on behalf of management; and

10. whether the employee represents the company in handling complaints, arbitrating disputes or resolving grievances."

29 C.F.R. § 541.202(b)(numbering added).

Though the determination of whether an employee exercised discretion and independent judgment with respect to matters of significance requires a case-by-case analysis, "[f]ederal courts generally find that employees who meet at least two or three of these factors are exercising discretion and independent judgment …." *Driggers v. Cable TV Installation & Serv.*, Case No. 8:08-cv-1238-T-17, 2009 U.S. Dist. LEXIS 50354, at *10 (M.D. Fla. June 16, 2009) (*quoting Villegas v. Dependable Construction Servs., Inc.*, Case No. 4:07-cv-2165, 2008 U.S. Dist. LEXIS 98801, at *26, (S.D. Tex. Dec. 8, 2008). Furthermore, "employees can exercise

discretion and independent judgment even if their decisions or recommendations are reviewed at a higher level." 29 C.F.R. § 541.202(c). "[F]inal decision-making authority over matters of consequence is unnecessary." *Villegas*, 2008 U.S. Dist. LEXIS 98801, at *26; *see also Tyler v. Union Oil Co. of California*, 304 F.3d 379, 401 (5th Cir. 2002).

At trial, RIPA will establish that as a Foreman, Superintendent and Assistant Superintendent, Plaintiff's duties met at least several of the aforementioned factors provided in 29 C.F.R. § 541.202(b).

The evidence will show that Plaintiff's primary duty as Foreman, Superintendent and Assistant Superintendent was the performance of office or non-manual work directly related to RIPA's management or general business operations and his primary duty included the exercise of discretion and independent judgment with respect to matters of significance.   Plaintiff operated in the field free from regular supervision, possessed a high degree of supervisory responsibility over RIPA employees, solved problems as they arose in the field, and frequently interacted with RIPA's clients. Therefore, the evidence at trial will establish that Plaintiff met all three prongs for the administrative exemption.

### B.      Plaintiff Is Not Entitled to Liquidated Damages

The Eleventh Circuit has articulated the following standard for establishing a good faith defense:

> An employer who seeks to avoid liquidated damages bears the burden of proving that its violation was 'both in good faith and predicated upon such reasonable grounds that it would be unfair to impose upon him more than a compensatory verdict.'

*Spires v. Ben Hill County*, 980 F.2d 683, 689 (11th Cir. 1993) (*quoting United States v. McKennon*, 814 F.2d 1539 (11th Cir. 1987), and citing 29 C.F.R. § 790.13 - .22).

An employer must show that it acted with both subjective and objective good faith to satisfy the good faith requirement. *Rodriguez v. Farm Stores Grocery, Inc.,* 518 F.3d 1259, 1272 (11th Cir. 2008). "To demonstrate the subjective component, an employer must show that it had 'an honest intention to ascertain what the FLSA requires and to act in accordance with those requirements.'" *Feniger v. Cafe Aroma*, No. 2:05cv319-TAW-SPC, 2007 U.S. Dist. LEXIS 18706, at *8 (M.D. Fla. March 16, 2007) (*citing Dybach v. State of Fla. Dep't of Corr.,* 942 F.2d 1562, 1566 (11th Cir. 1991)). "In other words, 'good faith requires some duty to investigate potential liability under FLSA.'" *Barcellona v. Tiffany English Pub., Inc.,* 597 F.2d 464, 469 (5th Cir. 1979). To prove the objective component of the good faith defense, an employer must "demonstrate that it had a reasonable belief that its conduct conformed with the FLSA." *Wajcman v. Inv. Corp.*, 620 F. Supp. 2d 1353, 1358 (S.D. Fla. 2009) (*citing Chao v. Tyson Foods, Inc.*, 568 F. Supp. 2d 1300, 1322 (N.D. Ala. 2008)).

"The awarding of liquidated damages is discretionary. If an employer acts in good faith, with a reasonable belief that his actions are in conformity with the Fair Labor Standards Act, the Court in its discretion may refrain from awarding liquidated damages to the complaining employee." *Summerfield v. Perfect Photo Div. of Photoelectronics, Inc.*, No. 81-3017, 1983 U.S. Dist. LEXIS 16203, *14-16 (E.D. Pa.) (*citing Neal v. Braughton*, 111 F. Supp. 775, 779 (W.D. Ark. 1953)); *see Truslow v. Spotsylvania Cnty. Sheriff*, 783 F. Supp 274, 278 (E.D. Va. 1992) *aff'd without opinion*, 1993 U.S. App. LEXIS 11123 (4th Cir. May 13, 1993). So long as the defendant establishes that it had a good faith belief that it was properly compensating the plaintiff, and that "belief was reasonably held," liquidated damages may be prohibited. *Summerfield*, 1983 U.S. Dist. LEXIS 16203, at *16; *see Truslow*, 783 F. Supp at 278. At trial, RIPA will establish that it had a subjective and objective good faith belief that Plaintiff was

being properly compensated under the executive and/or administrative exemptions to the FLSA.

Therefore, liquidated damages should not be awarded, if damages are awarded at all.

## III.    CONCLUSION

Plaintiff's work for RIPA as a Foreman, Superintendent and Assistant Superintendent qualifies him for the executive and/or administrative exemptions under the FLSA. Even if Plaintiff can show that he sat on a bulldozer over 50% of his work time, the evidence shows that Plaintiff simultaneously directed the project and supervised his crews, and therefore, that Plaintiff is exempt.

Respectfully submitted,

FORD & HARRISON LLP

By:/s/ William E. Grob_____
    William E. Grob
    Florida Bar No. 0463124
    wgrob@fordharrison.com
    Robert D. Hall, Jr.
    Florida Bar No. 186760
    rhall@fordharrison.com
    Elizabeth P. Kuhn
    Florida Bar No. 69452
    ekuhn@fordharrison.com
    101 E. Kennedy Boulevard, Suite 900
    Tampa, FL  33602-5133
    Telephone: (813) 261-7800
    Facsimile: (813)261-7899

    Attorneys for Defendant
    RIPA & ASSOCIATES, LLC

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on March 1, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send a notice of electronic filing to the following: Marcus A. Castillo, Esq., Haas & Castillo, P.A., 19321-C U.S. 19, North, Suite 401, Clearwater, Florida 33764 and Nancy L. Cavey, Esq., Law Offices of Cavey & Barrett, P.O. Box 7539, St. Petersburg, Florida 33734.

*/s/ William E. Grob*
Attorney

TAMPA:281306.1

18